Opinion filed April 1,
2010




 
 
 
 
 
 
 





                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                           No. 11-08-00161-CR

                                                     __________

 

                             VICTOR
LAMAR ROBERSON, Appellant

 

V.

 

                                       STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 39th District Court

 

                                                           Haskell
County, Texas

 

                                                       Trial
Court Cause No. 6006

 



 

                                                                  O
P I N I O N

The
jury convicted Victor Lamar Roberson of engaging in organized criminal
activity, assessed his punishment at seven and one-half years confinement, and
fined him $7,500.  We reverse and render a judgment of acquittal.

I.       
Background
Facts

Chief
Deputy Sheriff Winston Stephens clocked a vehicle traveling at eighty-nine
miles per hour in a seventy mile per hour zone.  He pulled the vehicle over and
asked the driver for her driver’s license and for proof of insurance.  She
claimed that she did not have her license with her and, instead, gave Deputy
Stephens her name and date of birth.[1]  This name
did not match any record on file with either the National Crime Information
Center or the Texas Crime Information Center.  She then gave a second last name
that also came back as “no record found.”

There
were two passengers in the vehicle.  Because the driver could not produce a
valid license, Deputy Stephens asked the passengers if they had a valid Texas driver’s
license.  Both said yes and told him that they would have to get it out of the
back of the vehicle.  The first passenger produced a license that appeared
valid, but the picture, height, and weight did not match him.  Roberson was the
second passenger and was sitting in the front seat.  He gave Deputy Stephens a
Texas ID card and a paper license.  Deputy Stephens ran this license and was
informed that it was invalid.  In fact, Roberson did have a valid license. 
Deputy Stephens could not explain why his search came back invalid.

Deputy
Stephens continued talking with the passengers in an effort to determine what
was wrong.  He had written the driver a ticket, and as soon as he verified that
one of the passengers had a valid driver’s license, he originally intended to
let them drive away.  Deputy Stephens did not smell any marihuana or see any
suspicious behavior, but when the driver gave him two false names and neither
passenger could produce a valid license, he became suspicious that there was
some criminal activity in progress.  Deputy Stephens called for a canine
officer and told everyone that he intended to let a drug dog walk around the
vehicle.  If the drug dog alerted, he would search the vehicle.  If not, then
everyone would be free to go.

The
canine officer arrived six minutes later.  The drug dog alerted on the front
passenger door, and in the subsequent search, Officer Donald Matthew Cunningham
of the Haskell Police Department found a seed and marihuana stem.  Officer
Cunningham also found on the floorboard, near where Roberson had been sitting,
a CD case and a briefcase with the name “V. Roberson” on it. A number of checks
that were drawn on fictitious banks, several driver’s licenses, and maps to
retail stores in or near Abilene, San Angelo, Lubbock, and Amarillo were found
in the briefcase.  Finally, Officer Cunningham found a billfold in the
passenger door pouch with two driver’s licenses and several credit cards issued
to Carl Mackey.

II.    Issues

Roberson
challenges his conviction with two issues.  First, he argues that the trial
court erred when it did not grant his motion to suppress the evidence.  Second,
he argues that the evidence is legally and factually insufficient to support
his conviction.

III.
Motion to Suppress

Roberson
alleges that the trial court erred when it refused to grant his motion to
suppress because the evidence obtained by Deputy Stephens was the result of an
illegal detention and search.  We review a trial court’s ruling on a motion to
suppress for an abuse of discretion.  Wiede v. State, 214 S.W.3d 17, 24
(Tex. Crim. App. 2007).  We view the record in the light most favorable to the
ruling, affording almost total deference to the trial court’s ruling on express
or implied determination of historical facts and its application of law-to-fact
decisions that are supported by the record and turn on an evaluation of witness
demeanor and credibility.  Id.  All other law-to-fact decisions are
reviewed de novo, which includes a trial court’s determination of reasonable
suspicion and probable cause.  See State v. Ross, 32 S.W.3d 853 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App.
1997).  The trial court did not make explicit findings of fact.  Therefore, we
view the evidence in the light most favorable to the trial court’s ruling and
assume that the court made implicit findings of fact supported by the record.  Ford
v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

For
Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable.  Sieffert v.
State, 290 S.W.3d 478, 482 (Tex. App.—Amarillo 2009, no pet.).  The driver
and any passengers are considered seized within the meaning of the Fourth
Amendment; therefore, any may challenge the legality of the stop and the length
and scope of their detention.  Brendlin v. California, 551 U.S. 249, 257
(2007).     

A
traffic stop is reasonable if the officer was justified in making the stop and
his actions were confined in length and scope to that necessary to fulfill the
purpose of the stop. Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App.
2004).  Roberson concedes that Deputy Stephens was justified in stopping their
vehicle.  He challenges, instead, the length and scope of the stop.  Roberson
argues that his continued detention was illegal because Deputy Stephens had
neither probable cause nor reasonable suspicion of criminal activity.

Because
Deputy Stephens was authorized to stop the vehicle, he was also authorized to
request identification, proof of insurance, and vehicle registration; to check for
any outstanding warrants; to confirm the vehicle’s registration; and to ask
about the purpose of the trip and intended destination.  Sieffert, 290
S.W.3d at 483.  This authority extended not only to the driver but to the
passengers as well.  Duff v. State, 546 S.W.2d 283, 286 (Tex. Crim. App.
1977).  But see St. George v. State, 237 S.W.3d 720, 726 (Tex.
Crim. App. 2007) (absent reasonable suspicion, officers may conduct only
consensual questioning of the passengers in a vehicle).  Deputy Stephens’s authority
is not, however, without its limits.  A traffic stop is temporary and may last
no longer than necessary to effectuate its purpose.  Kothe, 152 S.W.3d
at 63-64. Once this purpose has been satisfied, the stop may not be used as a
fishing expedition for unrelated criminal activity. Davis v. State, 947
S.W.2d 240, 243 (Tex. Crim. Appp. 1997).  

Roberson’s
position is based upon the premise that, because Deputy Stephens had written a
ticket, the purpose for the initial traffic stop had been satisfied and, thus,
that he was subjected to a continued detention.  Roberson then argues that
Deputy Stephens had no authority for this continued detention.  Roberson’s
argument fails because the underlying assumption is inaccurate:  the traffic
stop’s purpose had not been satisfied.

Roberson
relies primarily upon St. George.  In that case, officers issued the
driver a warning ticket and then continued interrogating a passenger.  The
court held that the officers had no specific articulable facts to believe that
the passenger was involved in any criminal activity and, without this, could
not continue questioning him regarding his identity or to detain him to check
for outstanding warrants. St. George, 237 S.W.3d at 726.

The
distinction between that case and this one is that Deputy Stephens had not
completed his initial investigation.  The driver did not have a valid driver’s
license and twice gave him a false identification.  Because Deputy Stephens was
authorized to check for any outstanding warrants, the continued detention while
he attempted to secure her identification was within the permissible scope of
the initial stop.  His decision to not let her drive away was not
unreasonable.  Likewise, his insistence on proof of a valid license before
releasing the vehicle to either passenger was not unreasonable and was within
the scope of the initial stop.  Moreover, unlike St. George, there is no
indication that Roberson’s actions were nonconsensual.  Cf. id.
(passenger told officer “[t]he problem is you’re questioning someone who is not
even driving a car and just sitting here and she got her ticket and there
shouldn’t be any other problem here”).

Deputy
Stephens’s decision to request a canine officer was also authorized as part of
his traffic stop investigation.  He had been given two false names by the
driver and a driver’s license by a passenger that did not appear to belong to
him, and Roberson produced a driver’s license that was incorrectly reported as
invalid.  Deputy Stephens’s conclusion that something inappropriate was in
progress was not unreasonable, and he was, therefore, authorized to continue
his investigation.  See Zervos v. State, 15 S.W.3d 146, 151 (Tex.
App.—Texarkana 2000, pet. ref’d) (if an officer develops a reasonable suspicion
that criminal activity is occurring during a valid traffic stop, a continued
detention is justified).

Deputy
Stephens testified that, when he was unable to secure a valid driver’s license,
he began to suspect that they were transporting drugs.  Whether he then acted
appropriately is judged by how diligently he pursued a means of investigation
that was likely to dispel or confirm his suspicion quickly.  Perez v. State,
818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no writ).  His conduct
satisfies this test.  The stop was not unnecessarily prolonged because the
canine officer arrived within six minutes, and the use of a drug dog was an
unobtrusive means of investigating his suspicion.  See Illinois v. Caballes,
543 U.S. 405, 409 (2005) (the use of a well-trained, narcotics-detection dog
during a lawful traffic stop generally does not implicate legitimate privacy
interests). 

The
trial court did not abuse its discretion by finding that Deputy Stephens acted
appropriately.  Because his actions were authorized, the trial court did not
err by denying the motion to suppress.  Issue One is overruled.

IV.
Factual & Legal Sufficiency

Roberson next asserts that the evidence is legally and factually
insufficient to support his conviction for engaging in organized criminal
activity.  To determine if the evidence is legally sufficient, we must
review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim.
App. 2000).  To determine if the evidence is factually sufficient, we must
review all the evidence in a neutral light and determine whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006).

A
person engages in organized criminal activity if he commits or conspires to
commit a felony offense with the intent to establish, maintain, or participate
in either a combination or the profits of a combination.  Tex. Penal
Code Ann. § 71.02 (Vernon Supp. 2009). 
The State alleged that Roberson and the two other individuals in the car
conspired to commit the offense of forgery and that the overt act of this
conspiracy was possession of checks written on a fictitious account.  The
State’s burden was to show more than the intent to commit forgery or to conspire
to commit forgery; the State was required to prove Roberson’s intent to
establish, maintain, or participate in a combination. Hart v. State,
89 S.W.3d 61, 63 (Tex. Crim. App. 2002).  Combination is defined as “three or
more persons who collaborate in carrying on criminal activities.” Tex. Penal Code Ann. § 1.01(a)
(Vernon 2003).

Direct
evidence of the intent to participate in a combination is not required.  A jury
may infer intent from any facts that tend to prove the combination’s existence,
including the alleged member’s words, acts, and conduct and the method of
committing the enumerated offense. Manrique v. State, 994 S.W.2d 640,
649 (Tex. Crim. App. 1999) (Myers, J., concurring).  It is permissible to infer
an agreement among a group working on a common project when each person’s
action is consistent with realizing the common goal.  McGee v. State,
909 S.W.2d 516, 518 (Tex. App.—Tyler 1995, pet. ref’d).  But proof of a single
ad hoc effort is insufficient.  See Smith v. State, 36 S.W.3d 908, 910
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (evidence that defendant was
involved in a one-time transaction is insufficient to establish an organized
criminal activity).  Instead, the combination must intend to engage in a
continuing course of criminal activity. Nguyen v. State, 1 S.W.3d 694,
697 (Tex. Crim. App. 1999).    

The
State argues that there was sufficient evidence of a combination because the
three individuals possessed numerous forged checks and identifications and
because the driver and the other passenger lied about their identities.  Clearly,
there was substantial evidence implicating Roberson of forgery.  In the front
of the vehicle where Roberson was sitting, the officers found a briefcase (with
Roberson’s name on it), a CD case, and a wallet with forged checks, driver’s
licenses, credit cards, and maps and directions to more than 150 retail stores.
 There was some evidence connecting the other passenger (who was ultimately
identified as Robert Lee Hall) to seized material. Hall gave Deputy Stephens a
driver’s license with the name Shawn Rowan.  Several of the checks were made
payable to Shawn Rowan.  But there was no evidence connecting the driver to any
of the checks, credit cards, or IDs.  The driver’s real name is Shawna Monique
Baines.  Initially, Baines told Deputy Stephens that her last name was
Bennett.  Later, she told him that her last name was Brooks.  These names were
not on any of the seized material.  The officers found several checks made
payable to Mary Lou Sheppard and identification for a Mary Lou Sheppard.  They
were found in the briefcase and CD case near Roberson, and there is no evidence
that Baines ever used this name.

Equally
clear is the fact that the State produced considerable evidence that all three
individuals were engaged in criminal activity.  Baines twice gave Deputy
Stephens a false name even though she had no active warrants.  Hall provided
someone else’s driver’s license; and, as noted, Roberson possessed several
forged items.  But multiple criminal acts, without more, does not establish a
combination engaged in organized criminal activity.  See Arredondo v. State,
270 S.W.3d 676, 682 (Tex. App.—Eastland 2008, no pet.). 

Furthermore,
Section 71.01’s legislative history makes clear that evidence of a conspiracy
by three or more to commit a felony is insufficient to establish a
combination.  Arredondo, 270 S.W.3d at 682.  Section 71.01 was
originally drafted by the Senate with the current definition of combination except
that it required five members rather than three.  The House proposed defining
combination as five or more people who engage in a criminal conspiracy as
defined by Tex. Penal Code Ann. § 15.02(a),
(b) (Vernon 2003).  A conference committee rejected this definition in favor of
the Senate version.  Id. at 682-83.  The Court of Criminal Appeals has
held, therefore, that this requires proof of more than a three-person
conspiracy but requires proof of a combination working together in a continuing
course of criminal activities. Nguyen¸1 S.W.3d at 697.

We recognize the practical problems the State faces
because direct evidence of a combination may be unavailable.  That is why an
agreement may be inferred and why courts have found sufficient evidence based
upon proof of coordinated action.  See, e.g, Dowdle v. State, 11 S.W.3d
233, 236-37 (Tex. Crim. App. 2000) (combination was shown when multiple
individuals participated in a well-planned burglary, met after the burglary to
discuss further plans, combined separate loads of stolen property, and then
traveled to another location to locate the stolen property and incriminating
evidence); Barber v. State, 764 S.W.2d 232, 236-37 (Tex. Crim. App.
1988) (combination existed when the defendants obtained operating capital,
leased property, purchased trucks, hired drivers, opened bank accounts, and
made arrangements to sell stolen oil); State v. Mauldin, 63 S.W.3d 485,
489 (Tex. App.—Tyler 2001, pet. ref’d ) (agreement could be inferred from a
coordinated interstate effort to deliver a large amount of cocaine over 1,500
miles); Mayfield v. State, 906 S.W.2d 46, 50-51 (Tex. App.—Tyler 1995,
pet. ref’d) (combination was shown when the evidence indicated a
well-orchestrated scheme involving multiple levels of dealers, transfers of
drugs and cash between them, and a central source of supply).

While
there was considerable evidence establishing Roberson’s guilt of forgery and
some evidence implicating Hall, there was no evidence connecting Baines to a
combination working together in a continuing course of criminal activity. 
Section 71.01(a) requires proof of three or more persons to establish a
combination.  The evidence, therefore, is legally insufficient to support
Roberson’s conviction for engaging in organized criminal activity, and Issue
Two is sustained.

V.   
Holding

The
judgment of the trial court is reversed, and judgment is
rendered acquitting Roberson of the charged offense.

            

                                                                                    RICK
STRANGE

                                                                                    JUSTICE

April 1, 2010

Publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J., 

McCall, J., and Strange, J.









[1]The record
does not indicate whether she produced proof of insurance or to whom the
vehicle belonged.