Jason ARREDONDO, Appellant,

v.

STATE of Texas, Appellee.

No. 11–07–00143–CR.

Court of Appeals of Texas, Eastland.

Oct. 16, 2008.

Arthur Aguilar, Jr., The Law Office of Arthur (Artie) Aguilar, Jr., Lubbock, for appellant.

Ricky B. Smith, District Attorney, Lamesa, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and, STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Jason Arredondo was indicted for sexual assault, aggravated sexual assault, and engaging in organized criminal activity (EOCA). Arredondo pleaded guilty to sexual assault but not guilty to the remaining allegations. The jury convicted him of aggravated sexual assault and EOCA and assessed his punishment at thirty years confinement for each offense. We affirm the judgment regarding the aggravated sexual assault, and we reverse the judgment regarding the EOCA conviction and render a judgment of acquittal on that charge.

### I. *Background Facts*

This incident arises out of a party involving minors, alcohol, and illegal drugs. Ultimately, one of the minor girls passed out, and two young men sexually assaulted her while she was unconscious.

The victim, C.B., was fifteen years old. She and her friend, J.T., intended to go out drinking. J.T. spoke with a friend, and they agreed to contribute money to buy alcohol for a party. C.B. brought "Ice" (an enhanced form of methamphet-

amine) with her to the party, and once there she also contributed money to purchase cocaine. C.B. drank alcohol and used drugs at the party. She eventually began feeling uncomfortable and attempted to call another friend, but he did not answer his phone. C.B. then became dizzy, went to a bedroom, and lay down on the floor.

C.B.'s next memory was when she awoke at eight or nine the following morning. Her lower back hurt, and she had no shoes. Several people were asleep in the living room. They told her that she had left during the night with J.G. and had come back a few hours later without her shoes. When C.B. got home, she called J.G. He denied coming to the party. C.B. then talked to her dad. He took her to the hospital in Lamesa and then to University Medical Center in Lubbock. A doctor examined C.B. and told her that he found sperm during her vaginal exam. The doctor also found small superficial abrasions on C.B.'s left wrist and at the six o'clock position of her vaginal area. C.B. tested positive for amphetamines, cocaine, and marihuana, but no date rape drug.

Detective Larry Flenniken, with the Lamesa Police Department, investigated this incident. He interviewed Arredondo and started by asking Arredondo if he knew why the police wanted to speak with him. Arredondo replied that it was because of what others were saying about him in reference to a girl at a party. Arredondo acknowledged being at the party but claimed that he went there to look after his cousin, M.G., because he did not want her associating with his friends. Arredondo said that there was a white girl at the party, that she was messed up, and that she offered him drugs, but he claimed that he said no and that he left the party around midnight.

Detective Flenniken told Arredondo that he did not believe him because of what he had heard from others. Arredondo changed his story. He said that the white girl offered him drugs and showed him something that looked like a rock. He knew that it was not cocaine but did not know what it was. Later, someone told him that the girl was messed up, that she had defecated on herself, and that everyone was laughing at her. Arredondo claimed that he left the party after this.

Detective Flenniken told Arredondo that he still did not believe him because of his other information. Arredondo eventually admitted that he had lain down on top of the girl but claimed that it was all a joke and that he did not do anything or remove his clothing. He claimed that M.G. was cheering him on and that she and P.C. kicked C.B. in the face. Arredondo agreed to write out a statement. After Detective Flenniken read it, he told Arredondo that he had DNA evidence. Arredondo changed his story again and said that, after playing like he was having sex with C.B., he went back to the bedroom and they did have sex. Arredondo provided Detective Flenniken with a DNA sample. That sample was sent to a DPS lab for testing. Arredondo's sample was consistent with DNA found on C.B.'s panties and vaginal swabs.

## II. *Issues*

Arredondo challenges his conviction with two issues. Arredondo contends that the evidence is legally and factually insufficient to sustain his conviction for aggravated sexual assault because there was no evidence that he acted in concert with anyone and that the evidence is legally and factually insufficient to sustain his conviction for EOCA because there was no evidence of his intent.

### III. *Standard of Review*

To determine if the evidence is legally sufficient, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim.App.2000). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992). The factfinder may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986).

To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App. 2006). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id.* at 414–15.

### IV. *Discussion*

#### A. *Aggravated Sexual Assault.*

■ A person commits sexual assault if they intentionally or knowingly cause the penetration of the sexual organ of a child by any means. TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (Vernon Supp.2008). "Child" is defined as a person younger than seventeen years of age who is not the actor's spouse. TEX. PENAL CODE ANN. § 22.011(c)(1) (Vernon Supp.2008). A violation of this provision is a second degree felony. TEX. PENAL CODE ANN. § 22.011(f) (Vernon Supp.2008).

Sexual assault becomes aggravated sexual assault and a first degree felony if the person acts in concert with another who commits a sexual assault against the same victim during the course of the same criminal episode. TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(v) (Vernon Supp.2008). The State alleged, and the jury found, that Arredondo committed aggravated sexual assault because he acted in concert with Jerry Ray Maldonado. Arredondo argues that the evidence is insufficient to sustain his conviction because of the lack of evidence that he and Maldonado acted in concert.

TEX. PENAL CODE ANN. § 22.021 (Vernon Supp.2008) does not define the term "in concert." Therefore, we construe it in accordance with its plain meaning unless that would lead to an absurd result that the legislature could not have possibly intended. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). In ascertaining a word or term's plain meaning, we read it in context and apply the rules of grammar and usage. *Ex parte Hood*, 211 S.W.3d 767, 773 (Tex.Crim.App.2007). We initially consult dictionary definitions and note that legal dictionaries are especially appropriate for ascertaining the meaning of a legal term. *Lopez v. State*, 253 S.W.3d 680, 685 (Tex.Crim.App.2008).

"Concert" is defined in the dictionary as "agreement in design or plan; union formed by mutual communication of opinion and views." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 257 (11th ed.2003). Parties act in concert when they act together. *Id.* Other publications define acting in concert as planning together or acting in harmony or conjunction. *See Peters v. State*, No. 04–97–01026–CR, 1999 WL 498203, at *3 (Tex.App.-San Antonio July 14, 1999, pet. ref'd) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 470 (1981)). Older versions of Black's Dictio-

nary defined "concert" to mean: "A person is deemed to act in concert when he acts with another to bring about some preconceived result." *See, e.g.*, BLACK'S LAW DICTIONARY 262 (5th ed.1979). Concert, however, is no longer a defined term. The most analogous defined word or phrase is "concerted action," which is defined as "[a]n action that has been planned, arranged, and agreed on by parties acting together to further some scheme or cause, so that all involved are liable for the actions of one another." BLACK'S LAW DICTIONARY 283 (7th ed.1999).

These definitions indicate that two or more individuals act in concert if their conduct is preplanned or if they act conjunctively to achieve a common purpose. There is no evidence that Arredondo and Maldonado planned to rape C.B. or to otherwise put her in a position where they could take advantage of her. The State points to evidence that Arredondo went to C.B.'s house to pick her up for the party and that he knew alcohol would be provided to minors; but, this is no evidence of a plan or agreement. Arredondo was a passenger in R.C.'s car when C.B. and J.T. were picked up. There is no evidence that Maldonado even knew C.B. would be at the party and no evidence that either Arredondo or Maldonado played a part in acquiring the alcohol, inviting C.B. to the party, or making the alcohol available to C.B.

The State next points to evidence that, after C.B. passed out, Arredondo raped her while everyone watched, laughed, and cheered him on. When he finished, Maldonado raped C.B., and others physically assaulted her. Those still at the house the next morning tried to cover up the incident by lying to C.B. about what had happened. The State characterizes these events as a gang rape and as evidence that Arredondo and Maldonado acted together. This may be sufficient evidence to establish that the people who encouraged Arredondo or Maldonado committed some criminal activity,[1] but we disagree that it is evidence that Arredondo and Maldonado acted in concert to sexually assault C.B.

The legislature distinguished sexual assault and aggravated sexual assault by requiring proof of concerted activity rather than some other form of exacerbating conduct such as serial action. The State's principal evidence, however, shows that Arredondo acted alone. He apparently saw C.B. lying on the floor unconscious and, without any prior encouragement or assistance from anyone else, decided to rape her. Witnesses saw him walk into the bedroom, take down his pants, and start having sex. When he finished, he announced to the group, "I had to do what I had to do." After that, he walked into the kitchen. Maldonado then went into the bedroom and raped C.B. No witness testified that Arredondo said anything to encourage Maldonado to rape C.B., that he facilitated Maldonado's assault by restraining C.B., or that he otherwise forced her to have sex with Maldonado.[2]

---

1. For example, a person is criminally responsible as a party to an offense when they are physically present at the commission of an offense and encourage the commission by words or other agreement. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim.App.1986).

2. *Cf. Vasquez v. State*, No. 07–01–0042–CR, 2002 WL 753490, at *5 (Tex.App.-Amarillo Apr.29, 2002, pet. ref'd) (evidence sufficient to establish defendant acted in concert with oth-

ers when several men in car with one fourteen-year-old female talked about raping her, took her to the country, restrained her on the ground, and sexually assaulted her vaginally and anally multiple times); *Peters*, 1999 WL 498203, at *3 (evidence sufficient to show the defendant acted in concert with others because he kept the victim from escaping when she was pulled into the apartment, was present when she was assaulted immediately after

Finally, the State argues that Maldonado's plea of guilty is evidence that he and Arredondo acted in concert. After the State rested, Arredondo called Maldonado as a witness. Maldonado testified that he had sex with C.B. but denied acting in concert with Arredondo. On cross-examination, Maldonado testified that he was in the penitentiary for aggravated sexual assault. He acknowledged signing a judicial confession admitting that he was guilty as charged. He then read his indictment to the jury. That indictment alleged the same aggravated sexual assault offense as Arredondo's indictment. Maldonado agreed that he had judicially confessed to acting in concert with Arredondo.

Arredondo did not object to this testimony or request a limiting instruction. The State contends, therefore, that it became part of the general evidence and that it could be used as proof to the full extent of its rational persuasive power, citing *Turro v. State*, 950 S.W.2d 390, 400 (Tex.App.-Fort Worth 1997, pet. ref'd). The State concludes that a rational juror could determine that Arredondo and Maldonado acted in concert based upon this confession. We agree that Maldonado's plea is some evidence and that a rational juror could have determined Arredondo's guilt based upon it.

The next question is whether Maldonado's plea is factually sufficient evidence. Because the only evidence directly supporting the verdict is Maldonado's plea, we must determine whether a rational juror could find Arredondo guilty based upon this plea in light of the other conflicting evidence. *Watson*, 204 S.W.3d at 414–15. While we view the evidence in a neutral light, we must give the evidence whatever weight and probative value it could ration-

ally convey to a jury. *See Moff v. State*, 131 S.W.3d 485, 489 (Tex.Crim.App.2004). Ultimately, determining whether a particular witness was being truthful or was covering for himself or someone else is for the jury to decide. *See* Tex.Code Crim. Proc. Ann. art. 36.13 (Vernon 2007) (jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony).

A rational juror could consider that Maldonado subjected himself to incarceration by pleading guilty and could conclude that he would not plead guilty to an offense he did not commit. That juror could discount Maldonado's subsequent trial testimony as an effort to cover for a friend. A rational juror could consider that Arredondo's story changed multiple times to conform to what the police knew and that the other witnesses had reason to minimize the party's events because of their potential criminal exposure. Finally, a juror could consider the events in context. C.B. was raped successively by Arredondo and Maldonado while others watched and cheered. This would be completely consistent with concerted action and with Maldonado's plea. Because a rational juror could find the plea credible and the other testimony less than credible, we cannot say that the jury's verdict is against the great weight of the conflicting evidence. Issue One is overruled.

### B. Organized Criminal Activity.

■ Tex. Penal Code Ann. § 71.02 (Vernon Supp.2008) provides that a person commits an offense if, with the intent to establish, maintain, or participate in a combination, he commits or conspires to commit one of several enumerated offenses including sexual assault. This requires

---

being forced into the apartment, and had sex with the victim after the others in the group

had done so and while they watched).

more than the intent to commit an enumerated offense; the State must prove the defendant's intent to establish, maintain, or participate in a combination. *Hart v. State,* 89 S.W.3d 61, 63 (Tex.Crim.App. 2002). Combination is defined as "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01(a) (Vernon 2003). The participants need not know each other's identity, and the combination's membership may change from time to time. *Id.* Arredondo argues that the evidence is legally and factually insufficient to sustain his EOCA conviction because there was no evidence of his intent to establish, maintain, or participate in a combination.

■■■ Direct evidence of the defendant's intent is not required. A jury may infer intent from any facts that tend to prove the combination's existence, including the defendant's words, acts, and conduct, and the method of committing the enumerated offense. *Manrique v. State,* 994 S.W.2d 640, 649 (Tex.Crim.App.1999) (Myers, J., concurring). It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal. *McGee v. State,* 909 S.W.2d 516, 518 (Tex.App.-Tyler 1995, pet. ref'd). Proof of a single ad hoc effort, however, is insufficient. *See Smith v. State,* 36 S.W.3d 908, 910 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (evidence that defendant was involved in a one-time transaction is insufficient to establish an organized criminal activity). The combination must intend to engage in a continuing course of criminal activity. *Nguyen v. State,* 1 S.W.3d 694, 697 (Tex.Crim.App. 1999).

The State points to evidence that, during the party, multiple criminal statutes were violated by multiple people to establish the requisite combination. Minors were undisputably involved in the purchase and consumption of alcohol and illegal drugs, C.B. was sexually assaulted twice while others watched and laughed, her shoes were stolen, and several of the party-goers attempted to cover up the assaults. We agree with the State that multiple statutes were violated and that three or more people were involved in most of the night's illegal activities; but, there was no evidence that this party was anything more than a one-time social gathering or that Arredondo intended to establish, maintain, or participate in a combination.

Evidence of multiple criminal violations alone does not establish a combination. For example, in *Ross v. State,* 9 S.W.3d 878, 880 (Tex.App.-Austin 2000, pet. ref'd), the defendant became enraged when he was inadvertently cutoff on the interstate by another driver. He and his friends then engaged in a series of threatening actions including attempting to force the victim's car into the center median. When she escaped and exited the interstate, the defendant and his friends blocked her car at a red light. They then forced her out of her car and physically beat her. The State argued that the series of continuing assaults beginning on the interstate and culminating in the final attack at the red light satisfied *Nguyen's* continuing course of criminal activities requirement and proved that the defendant was a participant in a combination. The Austin Court disagreed, holding that proof of a series of actions that were all part of the same criminal episode was insufficient to establish a combination engaged in a continuing course of criminal activities. *Ross,* 9 S.W.3d at 882.

The Austin Court cited the statute's legislative history in support of this conclusion. *Id.* Section 71.01 originated in the Senate as Senate Bill 151 and contained the current definition of combination ex-

cept that it required five rather than three individuals.[3] The House proposed defining combination simply as five or more people who engage in a criminal conspiracy as defined by TEX. PENAL CODE ANN. § 15.02(a), (b) (Vernon 2003). A conference committee rejected this definition in favor of the Senate version. The court concluded, therefore, that the statute requires more than a three-person conspiracy but instead requires a combination working together in a continuing course of criminal activities. *Id.*(citing *Nguyen v. State*, 977 S.W.2d 450, 455 (Tex.App.-Austin 1998), *aff'd*, 1 S.W.3d 694 (Tex.Crim. App.1999)). We note that, in the four legislative sessions subsequent to the *Nguyen* decision, the legislature has not amended the definition of "combination" and, therefore, presume that it agrees with this construction. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 692 (Tex.2007) (concluding that the legislature had accepted judicial construction of a statute by reenacting it without altering the operative provision).

We recognize that even a single criminal offense can support a conviction. *See Nguyen*, 977 S.W.2d at 455 ("the proscribed action may be the first actual crime committed by a member of the combination"). However, it is not the number of criminal actions that is determinative but whether the intent to engage in continuous criminal activities was shown. For example, in *Mayfield v. State*, 906 S.W.2d 46, 50–51 (Tex.App.-Tyler 1995, pet. ref'd), a combination was shown when the evidence indicated a well-orchestrated scheme involving multiple levels of dealers, transfers of drugs and cash between them, and a central source of supply. In *State v. Mauldin*, 63 S.W.3d 485, 489 (Tex.App.-Tyler 2001, pet. ref'd), the court held that

an agreement could be inferred from a coordinated interstate effort to deliver a large amount of cocaine over 1,500 miles. In *Barber v. State*, 764 S.W.2d 232, 236–37 (Tex.Crim.App.1988), a combination existed when the defendants obtained operating capital, leased property, moved oil storage tanks to the leased property, purchased trucks, hired drivers, opened bank accounts, and made arrangements to sell stolen oil. In *Dowdle v. State*, 11 S.W.3d 233, 236–37 (Tex.Crim.App.2000), a combination was shown when multiple individuals participated in a well-planned burglary, met after the burglary to discuss further plans, combined separate loads of stolen property, and then traveled to another location to locate the stolen property and incriminating evidence.

Unlike these examples, however, there was no evidence of intended continuity and thus no evidence of a combination. The evidence is that a group of young people gathered informally for a party and that during the course of their party several people individually made poor decisions that led to unfortunate consequences. While those poor decisions also involved multiple criminal violations, there is no evidence that this was anything more than a single criminal episode. The Texas Court of Criminal Appeals noted that combination requires proof of more than working jointly to commit a crime but requires proof of continuity. *Nguyen*, 1 S.W.3d at 696–97. That proof was simply not present in this case.

Even if we are mistaken, there is no evidence that Arredondo intended to establish, maintain, or participate in the combination. We have previously noted that the State's principal evidence shows that Arredondo acted alone when he assaulted C.B. While a rational juror could consider

---

**3.** Section 71.01(a) was amended in 1989 to require only three participants. *See* Act of

May 26, 1989, 71st Leg., R.S., ch. 782, § 1, 1989 Tex. Sess. Law Serv. 782 (Vernon).

Maldonado's plea as evidence of aggravated sexual assault, that plea does not support an EOCA conviction because Maldonado did not plead guilty to EOCA and because his plea only establishes that he and Arredondo acted in concert. Section 71.01 requires three or more people to establish a combination. The evidence, therefore, is legally insufficient to support Arredondo's EOCA conviction, and Issue Two is sustained.

## V. *Holding*

The judgment of the trial court by which Arredondo was convicted and sentenced for the offense of aggravated sexual assault is affirmed. The judgment regarding Arredondo's EOCA conviction is reversed, and judgment is rendered acquitting him of that charge.