**Opinion issued July 2, 2013.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-12-00349-CR
_____

**MICHAEL DWAYNE BRYANT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1321743**

---

## MEMORANDUM OPINION

A jury convicted Michael Dwayne Bryant of engaging in organized criminal

activity by committing the theft of copper in combination with John Dwigans and

Aaron Lashley.[1] After Bryant pleaded true to enhancement allegations, the jury sentenced him to five years' confinement in the Texas Department of Corrections—Institutional Division. In a single issue, Bryant contends that the evidence is legally insufficient to prove that he committed (1) the underlying offense of theft because that finding rests on uncorroborated accomplice statements that were later recanted and (2) the offense of engaging in organized criminal activity. We reform the trial court's judgment to reflect a conviction for the underlying theft of copper valued at less than $20,000, reverse the portion of the judgment assessing punishment, and remand the cause to the trial court for a new punishment determination.

## Background

Bryant, Dwigans, and Lashley were each charged with engaging in organized criminal activity after they were arrested for theft of copper from an apartment complex. Dwigans pleaded guilty. The State tried Lashley and Bryant together, and the jury convicted both men of engaging in organized criminal activity.[2] Dwigans, Lashley, several of the arresting officers, and N. Oshkoohi, who owned the apartment complex at the time of trial, testified at the trial.

---

[1]    TEX. PENAL CODE ANN. § 71.02(a)(1) (West 2011).

[2]    Lashley appealed his conviction to the Fourteenth Court of Appeals. That court concluded that the evidence was legally insufficient to support Lashley's conviction for engaging in organized criminal activity and reversed the conviction.

2

The apartment complex, located in Pasadena, consisted of eighteen buildings with eighty-four vacant units. The complex was enclosed by a six-foot high chain-link fence, with locked and gated entrances, and had numerous "no trespassing" signs displayed throughout the property. Oshkoohi testified that he did not have problems with trespassers coming into the property to live temporarily. Approximately two months before Bryant's arrest, however, he began to have problems with unknown individuals who would cut the fence, break into the units, and steal copper piping. He contacted the Pasadena Police Department and spoke with an across-the-street neighbor, who agreed to keep an eye on the property. He also walked through the complex's parking lots and driveways daily. Oshkoohi testified that he did not know how many thefts occurred at the complex but at least two major thefts had occurred. After the arrests of Bryant, Dwigans, and Lashley, the break-ins at the apartment complex stopped until the following month, when a similar break-in occurred.

On the morning of September 28, the neighbor called 911 and reported seeing one black male and two white males jump a fence and enter the apartment

---

*Lashley v. State*, No. 14-12-00336-CR, 2013 WL 1844220, at *7 (Tex. App.—Houston [14th Dist.] May 2, 2013, no pet.). The court, however, concluded that the evidence was sufficient to support conviction for the lesser included offense of theft. *Id.*

complex property.[3] The men were carrying a blue bag. The caller also reported a red Taurus parked on a street bordering the property, and advised that the men were likely going to steal copper. The 911 dispatcher notified officers of the Pasadena Police Department Direct Action Response Team, which specializes in surveillance of criminal activity.

Team members, including Officers R. Barrionuevo, E. Hudson, R. Saldivar, and Sergeant Zink, responded to the call. The officers had the apartment complex under surveillance approximately ten minutes after receiving the dispatcher's call. Barrionuevo, Hudson, Saldivar and a fourth officer set up surveillance with one on each side of the complex; Officer Zink drove around the complex.

While the officers were conducting surveillance, Oshkoohi drove by the property and discovered a cut in the fence that was not there the previous day. He testified that the fence had been cut with bolt cutters. He went into the complex and encountered one person—a "young man" later identified as Dwigans—carrying a bundle of copper pipes or bending down to pick up copper. Oshkoohi left, and as he was leaving the property, Officer Zink approached and told Oshkoohi to leave immediately. Officer Barrionuevo testified that Oshkoohi told Zink that "he observed some subjects inside his property actually picking up

---

[3] Bryant and Dwigans are white; Lashley is black. Bryant does not dispute that the men identified in the 911 call were he, Dwigans, and Lashley.

copper off the ground" and told Zink and another officer that he saw three guys enter the complex.

After Dwigans's encounter with Oshkoohi, Dwigans, Bryant and Lashley jumped the fence near the northeast corner of the complex and walked toward the red Taurus. Officer Saldivar testified that he saw them leave and did not see them carrying anything when they jumped the fence. He did not see any activity in the complex during the surveillance. Officer Hudson saw the three men get into the Taurus, but did not see them carry anything or open the trunk. With Lashley driving the Taurus, the three left the apartment complex.

Approximately three hours after the 911 caller reported three males jumping the apartment complex fence, patrol officers stopped Lashley, Bryant, and Dwigans at a convenience store across the street from the complex. Officers searched the Taurus and found a black laptop computer bag and a pair of bolt cutters in the trunk. No copper was found in the car.

Officer Saldivar spoke to Dwigans at the convenience store. According to Saldivar, when taken out of the Taurus, Dwigans "began wanting to speak and basically tell us what was going on." Officers Barrionuevo, Saldivar, and Hudson returned to the apartment complex along with Dwigans. Barrionuevo testified that Dwigans took the officers to several parts of the property and stated that "[a]ll three of them" were involved in "taking stuff" from the buildings. Barrionuevo

further testified that Dwigans told the officers "exactly when they got there, what they were doing, how they got over" and that they went to the complex to get copper, and that his information "fit exactly with what" the 911 caller told the dispatcher. Officers Saldivar and Hudson testified that Dwigans claimed to be the main person involved.

Outside at the apartment complex, Dwigans identified two large and very heavy bundles of copper pipe tied with copper wire that the three had bundled, and pointed out other pieces of copper on the ground. One bundle was located in a breezeway; the second bundle was located near the southeast gates. The bundles contained too many pieces of copper to count. Officer Saldivar testified that Dwigans was "very vague" about the units from which pipe was removed and pointed with his hand "saying [o]ver there, over there, some units over there[.]" Dwigans did not go with the officers into the buildings.

Officer Saldivar further testified that, while tracing possible routes to the fence, he found a blue bag. When asked whom the bag belonged to, Dwigans answered that it "[b]elonged to them." Saldivar assumed that Dwigans referred to Lashley and Bryant because "they were all three together when they entered the property and when they exited the property." The bag contained an electric saw, two battery packs, a hacksaw, and copper tubing from apartments at the complex.

6

Officer Saldivar testified that an electric saw is commonly used to cut copper and other metal. At the State's request, Saldivar examined a piece of copper recovered from the property and testified that that the cuts were consistent with use of the tools recovered on the scene. He testified that, based on the amount of copper recovered, the way it was organized and tied, and the amount of time that the three men were on the property, more than one person had worked to remove the copper. "They" likely had a plan when they went to the complex: "The tool[s] that they had set up, they had the smaller copper tubing in one bag. They had a larger set of copper . . . a little bit closer to the southeast gates . . . they had a large bundle of tubing about this same size piled up at that location." He further testified that "it appeared maybe one person was cutting, setting it aside and the other person was transporting it and they were piling it up, getting ready to move." Saldivar described this theft as more organized than others he had seen "having to do with the tools that they had and especially having the extra battery pack, knowing they were going to be there for a while, trying to get as much copper as possible as quickly as possible." The saw and battery packs indicated to him that "they had been working there for a period of time or they were expecting to work there for a period of time." Officer Barrionuevo testified that thieves usually remove copper pipe using bolt cutters or a saw.

Oshkoohi also was at the convenience store. While at the store, he saw an officer talking to Dwigans and overheard Dwigans tell the officer that that they were there taking copper. Oshkoohi, however, did not hear Dwigans state that Bryant or Lashley were involved. Oshkoohi further testified that he had never seen Lashley or Bryant before seeing them at the store.

After leaving the store and giving his statement at the police station, Oshkoohi returned to walk through the apartment complex with three officers. The officers took video or photographs of damage done to the property. Oshkoohi and the officers found units with broken windows and doors, electrical meters with wiring removed, and copper pipes that had been cut. They also found bundles of copper wrapped with copper wiring, indicating to him that "[s]ome people were cutting copper and they were trying to remove it from the property." Oshkoohi testified that the damage could have happened earlier; he was not testifying that the damage happened on the morning in question. But, he also testified that some of the damage was not there before the morning in question and had possibly been done between his visit to the property the day before and that day. He testified that the value of the copper removed was less than $20,000.

Bryant called Dwigans as a defense witness. Dwigans testified that on the morning in question, Bryant and Lashley came to his house before they left to go to the store and were driving around at 7:00 or 8:00 a.m. They went to the

8

apartment complex to smoke marijuana[4] because they did not want to smoke in the car. Dwigans testified that he had never been at the complex before. They jumped the fence on the northeast corner to get into the complex, went into a vacant unit, and smoked marijuana. They carried only a laptop in a black computer bag to listen to music.

At some point, Dwigans found copper on the ground in two bundles "right before we were fixing to leave" and decided to take it. He testified that he spent less than five minutes taking the copper. Dwigans saw Oshkoohi at the southeast corner of the property, ran back to Bryant and Lashley, and told them that they should leave because someone else was at the complex. All three men jumped the fence and walked to their car.

As to his statements to the officers, Dwigans testified that he took full responsibility for taking copper. He denied telling the officers that Lashley, Bryant, and he pulled copper out of the buildings, bundled it and were planning to steal it, although he did point out the bundles to the officers. Dwigans further testified that he told the officers that Bryant and Lashley "had nothing to with it, they had no foreknowledge." He was the only member of the group that tried to steal cooper. Finally, Dwigans testified that he did not see the blue bag. Dwigans did admit that

---

[4]    The officers did not recover any marijuana or drugs from the three men or the Taurus. The officers testified that there was no odor of marijuana on them.

he pled guilty to a charge of engaging in organized criminal activity to commit the theft of copper with Bryant and Lashley.

Lashley, who testified in his own defense, stated that he had never been to the apartment complex before and went there that morning only to smoke marijuana with Bryant and Dwigans. Lashley testified that he was driving around in a borrowed Taurus when he saw Bryant and Dwigans walking to a store. When they arrived at the complex, they found a balcony with a recliner where he stayed with Bryant. Dwigans "went off on his own" and, at one point, came running back and said that they had to leave because someone was in the complex. Lashley testified that he carried the laptop out of the complex and put it in the backseat of the car. He owned the laptop, the black bag, and CDs found in the trunk. He did not own the bolt cutters found in the trunk, had not used them before, did not take them onto the apartment complex property, and did not see Bryant cut or pick up any copper.

The jury found Bryant guilty of the offense of engaging in organized criminal activity with Dwigans and Lashley to commit the underlying theft of copper of a value less than $20,000. Bryant pleaded true to an enhancement of a previous conviction for engaging in an organized criminal activity. Following a punishment hearing, the jury assessed punishment of five years' confinement.

**Sufficiency of the Evidence**

Bryant challenges the legal sufficiency of the evidence to support his conviction for engaging in an organized criminal activity. A person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more" of the enumerated offenses, including theft. Tex. Penal Code Ann. § 71.02(a)(1) (West 2011); *Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002). To prove the offense of engaging in organized criminal activity, the State must prove the underlying enumerated offense, including the requisite intent. *See Hart*, 89 S.W.3d at 63. In this case, the underlying offense was the copper theft. "Theft" is defined as the appropriation of property with the intent to deprive the owner of the property without the owner's effective consent. Tex. Penal Code Ann. § 31.03(a), (b)(1) (West Supp. 2012).

**A.    Evidence to support the underlying offense of theft**

Bryant first contends that the evidence is insufficient to support a finding of the underlying offense of theft because the finding rests on Dwigans's uncorroborated accomplice statements that were later recanted. He asserts that the "entirety of the non-accomplice testimony only establishes" that he was at the

11

apartment complex, is insufficient to corroborate Dwigans's statements, and is legally insufficient to support a conclusion that he committed theft.[5]

## 1.    Standard of review

Article 38.14 of the Texas Code of Criminal Procedure provides that a conviction cannot stand upon accomplice testimony unless it is corroborated by other evidence that tends to connect the accused with the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cao v. State*, 183 S.W.3d 707, 710 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Corroborating evidence is insufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Solomon*, 49 S.W.3d at 361; *Cao*, 183 S.W.3d at 710. In assessing the sufficiency of corroborative evidence, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon*, 49 S.W.3d at 361. The testimony that is eliminated from consideration is that testimony given by live witnesses speaking under oath in court. *Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004,

---

[5]    Bryant contends that the corroborating evidence is insufficient to corroborate Dwigans's statements and that the remaining evidence is legally insufficient to support a conviction that he committed theft. The Court of Criminal Appeals has declined to impose legal sufficiency standards on a review of accomplice witness testimony. *Cathey v. State*, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999).

no pet.). The non-accomplice evidence need not directly link the accused to the commission of the offense or be sufficient to establish the accused's guilt beyond a reasonable doubt. *Solomon*, 49 S.W.3d at 361; *Cao*, 183 S.W.3d at 710. Article 38.14 merely requires that some non-accomplice evidence tend to connect the accused with the crime; it does not require non-accomplice evidence for every element of the crime. *Cao*, 183 S.W.3d at 711 (citing *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001)). The evidence simply must link the accused in some way to the commission of the crime and show that rational jurors could conclude that the evidence sufficiently tended to connect the accused to the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

### 2. Corroboration of Dwigans's statements is not required

Bryant contends that Dwigans, a co-indictee, is an accomplice as a matter of law and, thus, his testimony must be corroborated. "An accomplice is one who participates in an offense, before, during, or after its commission, to the extent that he can be charged with the offense or with a lesser-included offense." *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002). A prosecution witness indicted for the same offense as the defendant is an accomplice as a matter of law. *Id.*

Dwigans is not a witness whose testimony must be corroborated. Corroboration of accomplice testimony is required when the State relies on the accomplice witness's testimony. *See Johnson v. State*, 853 S.W.2d 527 (Tex. Crim.

13

App. 1992) (explaining that accomplice-witness testimony must be corroborated when State calls witness and seeks to rely on witness's testimony); *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998) ("The corroboration requirement applies only when the accomplice witness is called by the State"); *see also Thomas v. State*, 993 S.W.2d 392, 396 (Tex. App.—Eastland 1999, no pet.) (concluding that testimony of witness who pleaded guilty to same offense did not need corroboration and could corroborate other accomplice testimony because defendant offered witness's testimony). In this case, Bryant, not the State, called Dwigans to testify as a witness at trial.

Bryant, however, does not assert that Dwigans's in-court testimony must be corroborated. He directs his challenge to Dwigans's statements to the officers and to their in-court testimony about those statements. Officer Barrionuevo testified that Dwigans said that "[a]ll three of them" were involved in taking stuff from the property. Officer Saldivar testified that Dwigans said that the blue bag "[b]elonged to them." Bryant asserts that these statements are the only evidence to incriminate him of anything other than criminal trespass.

The officers' testimony is not accomplice testimony that requires corroboration. Under article 38.14, the testimony that must be corroborated is testimony "adduced in open court by live witnesses under oath." *Bingham v. State*, 913 S.W.3d 208, 210 (Tex. Crim. App. 1995) (op. on reh'g). In *Bingham*, the

14

Court considered whether "a hearsay statement of a non-testifying accomplice to the offense" required corroboration before the jury could consider the statement in its deliberations upon appellant's guilt. *Id.* at 209. The Court held that the accomplice's out-of-court statements did not require corroboration; article 38.14 does not apply to out-of-court statements. *Id.*; *see Nguyen v. State*, 177 S.W.3d 659, 669 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (stating that "accomplice rule applies only to testimony adduced in open court by live witnesses"). Neither Officer Barrionuevo nor Officer Saldivar, who testified to the statements, was an accomplice witness.

Although Dwigans testified at trial, he did not testify to the statements about which Bryant complains. And he testified as a witness for Bryant, not as a witness for the prosecution. We conclude that Dwigans's statements to which the officers testified do not require corroboration under article 38.14.

### 3. The evidence is sufficient to demonstrate a theft

Even assuming that Dwigans's statements required corroboration, the record contains sufficient evidence that tends to connect Bryant to the theft. Lashley and Dwigans testified that they and Bryant went to the vacant apartment complex to smoke marijuana and drove to the apartment complex in a red Taurus. That morning, a 911 caller reported having seen one black male and two white males, carrying a blue bag, jump the fence at the apartment complex. The caller also

15

reported a red Taurus parked next to the complex. The caller's description of one black male and two white males matches Lashley, Bryant, and Dwigans. And the time of the 911 call is consistent with the time that they were driving around that morning. Oshkoohi testified that, while he was on the property, he saw Dwigans carrying a bundle of copper or picking up copper from the ground. Officer Barrionuevo testified that Oshkoohi told Officer Zink that he observed "some subjects inside his property" picking up copper from the ground. After the encounter with Oshkoohi, the three men ran to leave the complex. Around 11:40 a.m., approximately three hours after Lashley, Bryant and Dwigans arrived at the complex according to the 911 call, Officer Saldivar saw them jump the fence near the northeast corner of the complex and leave. Officer Hudson testified that he saw the three men get into the red Taurus and drive away from the complex.

When the officers returned to the apartment complex with Dwigans, he pointed out the two copper bundles, one of which was near a southeast gate. Officer Saldivar testified that he found a blue bag—the color of the bag identified by the 911 caller—in the area where the accused jumped the fence. The bag contained battery packs and an electric saw, which is commonly used to cut copper and metal. The saw and battery packs indicated to Saldivar that "they had been working there for a period of time or they were expecting to work there for a period of time." According to Saldivar, the amount of time the three were on the

16

property, the amount of copper found, and the way it was organized and tied indicated to him that more than one person assisted in the copper removal. Although Lashley and Dwigans testified that they were smoking marijuana at the complex, two of the officers, both trained in narcotics detection, did not detect any sign of marijuana use.

This evidence does more than show Bryant's "mere presence" at the apartment complex. A rational jury could have reasonably concluded that the non-accomplice evidence tends to connect Bryant with the copper theft. The corroborating evidence provides evidence that Bryant was at the complex, and a bag containing tools and copper was found on the ground near the corner where the three jumped the fence to leave the property. Dwigans pointed out copper bundles to the officers. The bundles of copper pipe wrapped in copper wire likely required more than one person to organize and move. "Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984).[6]

---

[6] Bryant also suggests that Dwigans's statements should be disregarded because his testimony conflicted with the officers' testimony. Dwigans's credibility as a witness was an issue for the jury to decide. *Solomon v. State*, 49 S.W.3d 356, 362 (Tex. Crim. App. 2001).

**B.      Engaging in organized criminal activity**

Bryant also contends that the evidence is insufficient to support a finding that he engaged in organized criminal activity. Specifically, he asserts that the evidence does not show that he had the intent to participate in ongoing criminal activities.

**1.      Standard of review**

We review Bryant's challenge to the legal sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789. Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing a person's guilt, and alone can be sufficient to establish guilt. *Id.* Although we consider all evidence presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App.

2007). Because the jury is the sole judge of the credibility of the witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Westbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

### 2. The evidence is insufficient to demonstrate organized criminal activity

A person engages in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more enumerated offenses, including theft. TEX. PENAL CODE ANN. § 71.02 (West 2011). A "combination" requires three or more persons who collaborate in carrying on criminal activities. *Id.* at § 71.01(a) (West 2011). To "collaborate in carrying on criminal activities" requires more than an agreement to jointly commit a single crime. *Nguyen v. State*, 1 S.W.3d 694, 696 (Tex. Crim. App. 1999); *Adams v. State*, 40 S.W.3d 142, 144 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The State must prove that the defendant intended to establish, maintain, or participate in a combination, or participate in the profits of a combination and that the members of the combination intended to work together in a continuing course of criminal activity. *Hart*, 89 S.W.3d at 63; *Ledet v. State*, 177 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). There must be evidence of an agreement to act together in this continuing course of activity. *Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim.

19

App. 1988); *Ledet*, 177 S.W.3d at 218. Direct evidence of intent is not required; circumstantial evidence may be used. *Ledet*, 177 S.W.3d at 218 (citing *Hart*, 89 S.W.3d at 64).

The State, therefore, had to prove more than that Bryant committed an offense enumerated in section 71.02 with two or more people. The State is required to prove that the defendant committed the predicate offense with the specific intent to participate in or facilitate a combination. *Rodriguez v. State*, 90 S.W.3d 340, 354 (Tex. App.—El Paso 2001, pet. ref'd). And, pertinent here, the State must prove "continuity"—that is, that the defendant and two or more people agreed to "work together in a continuing course of criminal activities." *Nguyen*, 1 S.W.3d at 697. "Continuity implies something more than a single *ad hoc* effort." *Smith v. State*, 36 S.W.3d 908, 910 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (citing *Nguyen*, 1 S.W.3d at 697).

Bryant contends that "the evidence shows at most a single theft of copper." In other words, even if the evidence supports a finding that he stole copper on the morning in question, the evidence is insufficient to prove his intent to engage in a continuing course of criminal activity. Proof of that intent did not require direct evidence. Circumstantial evidence may be used to prove the existence of an agreement to collaborate in continuing criminal activities. *Munoz v. State*, 29 S.W.3d 205, 209 (Tex. App.—Amarillo 2000, no pet.). The jury may infer intent

20

from any facts that tend to prove the defendant's words, acts, and conduct, and the method of committing the enumerated offense. *Arrendondo v. State*, 270 S.W.3d 676, 682 (Tex. App.—Eastland 2008, no pet.). Nevertheless, we conclude that the evidence is insufficient to show that Bryant intended to participate in a group that would work together in a continuing course of criminal activities when he committed the underlying theft.

Viewing all of the evidence, direct and circumstantial, in the light most favorable to the jury verdict, the evidence is sufficient to show that Bryant, along with Lashley and Dwigans, was at the apartment complex to steal copper on the morning in question and that Dwigans, Lashley, and Bryant were involved in stealing copper from the complex. The jury may also have reasonable inferred that they entered the complex carrying a blue bag, as described by the 911 caller, and discarded the bag near the location where they jumped the fence. Finally, they may also have inferred that while on the property, Dwigans, Lashley, and Bryant cut and bundled copper pipe and copper wire to remove from the property and left the copper when interrupted by Oshkoohi.

The evidence, however, does not indicate that Bryant intended to participate in a group that would work together in a continuing course of criminal activities. *See Lashley v. State*, No. 14-12-00336-CR, 2013 WL 1844220, at *4 (Tex. App.—Houston [14th Dist.] May 2, 2013, no pet.) ("Evidence must be offered that allows

21

a jury to infer that the group intended to continue engaging in illegality over a period of time."); *see also Hart*, 89 S.W.3d at 65 (holding that evidence supported finding that defendant participated in one theft with others who had participated in theft ring, but did not support finding that he knew of ring's existence and intended to participate).

Even considering evidence that the State contends supports the necessary theft finding, we conclude that the evidence is insufficient. First, the State asserts that the jury may have inferred that Bryant, Lashley and Dwigans participated in "copper thefts." But none of the evidence of the events of that day or Dwigans's confession supports a finding of multiple thefts. *See Adams*, 40 S.W.3d at 145 (concluding that series of criminal actions that were part of same criminal episode did not give rise to inference of agreement as to continuity); *see also Arredondo*, 270 S.W.3d at 682 ("Evidence of multiple criminal violations alone does not establish combination.").

Second, the State asserts that the tools found in the trunk and the blue bag demonstrate a continuing course of conduct. The State contends that the bolt cutters found in the trunk and cut copper wire found at the complex support an inference that "Bryant and the others had been inside the apartments cutting wire on another occasion[.]" Similarly, the State asserts that the evidence of the tools in the blue bag, which Dwigans said belonged to "them," and the bolt cutters supports

22

an inference that the three men intended to use the tools in connection with multiple copper thefts rather than with only a single theft.[7] We disagree. There was no evidence that the number of tools found was inconsistent with a single theft.

Although circumstantial evidence alone can be sufficient to establish guilt, a conclusion based on circumstantial evidence must be based on an inference, and not speculation. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt."). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Id.* Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* Any conclusion based on the bolt cutters or blue bag as evidence of an intent to

---

[7]     The State cites several cases to support this argument. *See, e.g., McGee v. State*, 923 S.W.2d 605, 608 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (concluding that evidence that defendant entered house, carrying flashlight and screwdriver, and then fled showed intent to commit theft of air conditioning units); *Macias v. State*, 704 S.W.2d 484, 486 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (concluding that evidence that defendant was seen jumping off building at night with stolen property and tools showed intent to commit theft); *Commonwealth v. Hardick*, 380 A.2d 1235, 1237-38 (Pa. 1977) (concluding that evidence of defendant's possession of specialized tools for safe-cracking supported conclusion that defendant possessed tools to employ them criminally). Although these cases may support an argument that possession of the tools in this case evidences an intent to commit theft, the cases do not support the argument that possession in this case evidences the requisite intent for engaging in organized criminal activity. *See Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002) (explaining that intent for engaging in organized criminal activity is more than intent to commit underlying offense).

create a group to carry on criminal activities must be based on speculation and not inference. Thus, in this case, the State's reasonable inferences are speculation and will not support Bryant's conviction.

Third, the State points to Oshkoohi's testimony about copper thefts at the complex before Bryant's arrest, and asserts that the jury reasonably inferred and concluded that Bryant, Lashley, and Dwigans were responsible for the thefts. This evidence does not establish continuity. No evidence connects Bryant to the thefts before his arrest.[8] *See Lashley*, 2013 WL 1844220, at *4 (concluding that absent evidence linking defendant to previous thefts at apartment complex, evidence did not show that "combination was more than temporarily organized to achieve a single criminal act"). And, Oshkoohi testified that additional thefts occurred after the arrests. The number of criminal actions is not determinative; the intent to engage in continuous criminal activities is determinative. *Arrendondo*, 270 S.W.3d at 683. One criminal act may be sufficient, but that act must be committed with the intent to establish a combination. For example, an enumerated offense may be the first actual crime committed by a member of the combination. But, there must be

---

[8] The State relies on *United States v. Hull*, 792 F.2d 941, 943 (9th Cir. 1986), to support the assertion that a jury's inference of responsibility for earlier thefts is reasonable when the thefts stopped after the defendant was arrested. *Hull* is not persuasive. The area surrounding the apartment complex is unlike the defendant's postal work station in *Hull*. One officer described copper theft as an "epidemic" in the Pasadena area; another officer compared thefts to a "plague." And, unlike the thefts in *Hull*, the copper thefts continued after Bryant's arrest.

some evidence of intent to establish a group of three or more that works together in continuing a course of criminal activities. *Nguyen v. State*, 977 S.W.2d 450, 455–56 (Tex. App.—Austin 1998), *aff'd*, 1 S.W.3d 694 (Tex. Crim. App. 1999). The record in this case includes no evidence that Bryant committed the theft in question with an intent to form a group to work together in a continuing course of criminal activities. *See, e.g., Hart*, 89 S.W.3d at 66 (holding that evidence was legally insufficient to support conviction for engaging in organized criminal activity when defendant participated in theft of one vehicle with theft ring absent evidence that defendant knew of theft ring's existence); *Smith*, 36 S.W.3d at 910 (holding that evidence was insufficient to prove defendant, who sold stolen cigarettes, engaged in organized criminal activity without evidence that he and others had agreed to work together in a continuing course of trading in stolen cigarettes).

## Conclusion

We conclude that the evidence is sufficient to support a finding that Bryant committed the underlying offense of copper theft and insufficient to support a finding that he engaged in an organized criminal activity.

Bryant requests reformation of the trial court's judgment if we conclude that the evidence is insufficient to support his conviction for engaging in organized criminal activity but is sufficient to support a conviction for theft of copper. The State requests the same relief in that circumstance. We reform the trial court's

judgment to reflect a conviction for theft of copper valued at less than $20,000 and affirm the conviction as modified. We reverse the portion of the judgment assessing punishment and remand the cause to the trial court for a new punishment determination. *See* TEX. R. APP. P. 43.2; *Hart*, 89 S.W.3d at 66; *Adams*, 40 S.W.3d at 146.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).