In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00459-CR
_____

ERIC BERNARD MCGOWEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR28585

## MEMORANDUM OPINION

A jury found Eric Bernard McGowen guilty of aggravated sexual assault of a child and assessed his punishment at ninety-nine years in prison. McGowen argues that the evidence was insufficient to support his conviction, that trial counsel was ineffective, and that there was reversible error in the jury charge. We find no merit to McGowen's challenges and affirm the conviction.

BACKGROUND

R.S., an eleven-year-old girl, was sexually assaulted by a group of males over a two month period at different locations. On one of the occasions, R.S. was taken to the "baby room" in the "blue house" where she was sexually assaulted by several males, and then later that day was again sexually assaulted by various males in a brown trailer. R.S. testified there were probably more than twenty males that assaulted her that day, and the record reveals she was at the blue house and the trailer for several hours. Brad Lewis, Isaiah Ross, Marcus Porchia, and appellant, Eric McGowen, were among those indicted for the aggravated sexual assault of R.S.

The jury not only found that McGowen committed aggravated sexual assault, but also found that he acted in concert with another who engaged in aggravated sexual assault of the child.[1] The effect of both of those findings is to increase punishment from a minimum of five years to a minimum of twenty-five years. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B), (2)(A)(v), (b)(1), (e), (f) (West Supp. 2013).

---

[1] The "acting in concert" element makes the offense an aggravated sexual assault. *See* Tex. Penal Code Ann. § 12.32 (West 2011), § 22.021(a)(1)(B), (2)(A)(v), (b)(1), (e), (f) (West Supp. 2013).

ACCOMPLICE-WITNESS INSTRUCTION

In issue one, McGowen argues that the trial court erred in failing to include a jury-charge instruction regarding accomplice-witness testimony, and that the error caused him egregious harm. The accomplice-witness instruction is set out in article 38.14 of the Texas Code of Criminal Procedure and provides as follows:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). "A prosecution witness who is indicted for the same offense with which the defendant is charged is an accomplice as a matter of law." *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002). It is undisputed that Lewis, Ross, and Porchia were accomplices as a matter of law, and they each testified at McGowen's trial. "If a prosecution witness is an accomplice as a matter of law, the trial court is under a duty to instruct the jury accordingly." *Id*. "Failure to do so is error." *Id.*; *see also Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012).

Under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984) (op. on reh'g), the appropriate harm standard for such an error depends on whether the defendant preserved error by bringing the improper omission to the trial court's attention. *See Herron*, 86 S.W.3d at 632; *see also Casanova*, 383 S.W.3d at 533-34

3

(applying *Almanza*). If the error was properly preserved, the appeals court must reverse if "some harm" is shown. *Herron*, 86 S.W.3d at 632. If the defendant failed to preserve the complaint, however, the error "must be 'fundamental'" and requires reversal only "if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171). Under the egregious harm standard, the omission of the accomplice-witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron*, 86 S.W.3d at 632 (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). The reviewing court "must take the entire record into account, as in any *Almanza* analysis[.]" *Casanova*, 383 S.W.3d at 534.

ACCOMPLICE-WITNESS TESTIMONY

Lewis, Ross, and Porchia each admitted to having sex with R.S. Each one also testified to McGowen's presence at the scene when the sexual assaults occurred, but each one also testified he did not see McGowen engage in sexual relations with R.S. Lewis further testified that approximately one week prior to trial, McGowen threatened to kill him if he testified at trial.

4

The accomplices' testimony provided no direct support for the allegation pleaded in the indictment that McGowen sexually assaulted R.S. But the accomplice-witness testimony did place McGowen at the scene of the sexual assaults and did have implications for the "acting in concert" pleading in the indictment and in the jury charge. Lewis testified that McGowen was one of the males who picked R.S. up and brought her to the place where she was subjected to what is commonly known as "gang rape." Ross indicated he saw McGowen stick a beer bottle in R.S.'s sexual organ. Porchia testified he saw McGowen standing around in the room and watching as R.S. was being sexually assaulted by various other males. Had the accomplice-witness instruction been given, the jury could not have considered this accomplice evidence unless corroborating, non-accomplice evidence tended to connect McGowen with the crime committed, including the "acting in concert" element of the offense.

THE NON-ACCOMPLICE EVIDENCE

There was non-accomplice evidence tending to connect McGowen to the offense. R.S. testified McGowen and Jared Cruse picked her up in a car and took her to a room known as the "baby room." She recognized some of the males there, including McGowen. One of the sexual assaults was recorded on videotape. The prosecutor questioned R.S. about its contents. In response to the prosecutor's

5

question, R.S. agreed there were people "hollering in the background" while the sexual assault was taking place, and she indicated McGowen was one of those doing the "hollering." The voice heard on the videotape is urging the perpetrator on, while the sexual assault is being committed. R.S. testified the males present took turns with her.

The males then took R.S. to a brown trailer (the "brown house"). R.S. testified that during the course of the various sexual assaults she had sex with McGowen, and she performed oral sex on him. He also stuck a beer bottle in her sexual organ. A videotape of that act was admitted into evidence and played for the jury.

Other non-accomplice, corroborating evidence included McGowen's written, signed statement and his videotaped statement in which he confessed that R.S. performed oral sex on him. The jury also heard evidence that multiple males used condoms, and numerous condoms and condom wrappers were recovered from the scene. The testimony of the forensic scientist with the Texas Department of Public Safety supported a finding that DNA from McGowen and R.S. was present on one of the condoms found at the scene. Ashley Huynh, the forensic nurse examiner who examined R.S., testified that R.S. told her that once she was at her "home boy's house," McGowen and other males threatened R.S. with bodily harm

6

if she did not "get naked[.]" She complied. R.S. also explained to Huynh that McGowen put the glass beer bottle in her sexual organ, and then took her in a room and sexually assaulted her with his sexual organ. The nurse's examination occurred on December 3, 2010, a few days after the November 2010 sexual assaults. Almost two years later, during the August 2012 trial, R.S. testified she did not remember whether she had sex with McGowen at the baby room that day, or whether she had vaginal sex with McGowen at the brown house.

Whether the trial court's error in failing to submit an accomplice-witness instruction is harmful is "a function of the strength of the corroborating evidence." *Casanova*, 383 S.W.3d at 539. The strength of the non-accomplice evidence is a "function of (1) its reliability or believability and (2) how compellingly it tends to connect the accused to the charged offense." *Id*. As detailed herein, there was significant non-accomplice evidence that tended to connect McGowen to the aggravated sexual assault of R.S. and to his having acted in concert with others to commit the offense. The non-accomplice evidence was not so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. We find the failure to give the accomplice-witness instruction was harmless, and we overrule issue one.

In issue two, McGowen argues his trial counsel was ineffective for failing to request an accomplice-witness instruction. If counsel had done so, he would only have had to show "some harm" rather than egregious harm. McGowen contends that had trial counsel obtained the instruction, his counsel "could have argued that the accomplices' testimony should be discounted and dismissed by the jury, thus chipping away at the State's case."

To establish ineffective assistance of counsel, McGowen must show by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "'Reasonable probability' is a 'probability sufficient to undermine confidence in the outcome,' meaning 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (quoting *Strickland*, 466 U.S. at 687, 694). As the Court of Criminal Appeals has observed, "[I]t is difficult to envision that any competent attorney would reasonably forego an accomplice-witness jury instruction as a matter of strategy based on his theory of the case." *Zamora v. State*, No. PD-1395-12, 2013

WL 5729980, at *8 (Tex. Crim. App. Oct. 23, 2013). We assume, without deciding, that trial counsel's failure to request the accomplice-witness instruction was deficient performance. We turn to the second prong under *Strickland*.

In this context, the analysis will turn on "whether there was a substantial amount of non-accomplice evidence and whether the record reveals any rational basis on which the jury could have doubted or disregarded that evidence." *Davis v. State*, 278 S.W.3d 346, 353 (Tex. Crim. App. 2009). As we have detailed herein, the record reflects there was a significant amount of non-accomplice evidence tending to connect McGowen to the offense. We cannot say that, in the absence of the testimony of Lewis, Ross, and Porchia, the non-accomplice evidence is so unconvincing as to render the State's overall case for conviction clearly and significantly less persuasive. The record reveals no rational basis on which the jury could have doubted or disregarded that evidence. Any failure to request an accomplice-witness instruction was harmless, and there is not a reasonable probability that, but for defense counsel's failure to request an instruction, the result of the trial would have been different. *See Smith v. State*, 392 S.W.3d 190, 197 (Tex. App.—San Antonio 2012, pet. ref'd). We overrule issue two.

LEGAL SUFFICIENCY OF THE EVIDENCE

McGowen argues the evidence is legally insufficient to support the finding of guilt for aggravated sexual assault of a child and the finding that he acted in concert with another in the commission of the same crime. We review the sufficiency of the evidence to support a conviction by analyzing "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury has a duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Our review of all of the evidence includes evidence that was improperly admitted and properly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The record reflects there is evidence, meeting the beyond-a-reasonable-doubt standard, that McGowen engaged in oral and vaginal sex with R.S., and that he acted in concert with other males that day who were engaging in the same conduct. McGowen appears to argue that in order for "acting in concert" to have occurred, he must have held R.S. down while another male committed the offense of aggravated sexual assault. We find no such requirement in statute or case law. *See Arredondo v. State*, 270 S.W.3d 676, 679-80 (Tex. App.—Eastland 2008, no

10

pet.) (noting that "in concert" not defined in statute, but concluding that "two or more individuals act in concert if their conduct is preplanned or if they act conjunctively to achieve a common purpose"). The jury could have concluded beyond a reasonable doubt that McGowen committed aggravated sexual assault against R.S. and that he "worked conjunctively" with others in the commission of the crime. We conclude the evidence is legally sufficient to support the jury's finding that McGowen committed aggravated sexual assault.

We overrule issue three. The judgment is affirmed.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on November 8, 2013
Opinion Delivered December 18, 2013
Do Not Publish

Before McKeithen, C.J., Kreger, and Horton, JJ.