**Opinion filed November 30, 2016**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-14-00322-CR, 11-14-00323-CR, 11-14-00324-CR, & 11-14-00325-CR

_____

## ALFONSO HERNANDEZ A/K/A ALFONSO DARDEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 35th District Court
### Brown County, Texas
### Trial Court Cause Nos. CR22623, CR22626, CR22627, & CR22628

### M E M O R A N D U M   O P I N I O N

The trial court convicted Alfonso Hernandez a/k/a Alfonso Darden of four offenses: engaging in organized criminal activity (Cause No. 11-14-00323-CR), theft with a value of over $100,000 but less than $200,000 (Cause No. 11-14-00324-CR), burglary of a building (Cause No. 11-14-00325-CR), and unauthorized use of a vehicle (Cause No. 11-14-00322-CR). The trial court sentenced Appellant to confinement in the Institutional Division of the Texas Department of Criminal

Justice for a term of thirty years for engaging in organized criminal activity and twenty years for the theft conviction. For each of the two other convictions, the trial court sentenced Appellant to confinement in the State Jail Division of the Texas Department of Criminal Justice for a term of two years. The trial court further ordered that all the sentences are to run concurrently.

In five issues on appeal, Appellant argues that (1) the trial court erred in denying Appellant's motion to suppress the evidence obtained from Appellant's vehicle, (2) the evidence is insufficient to prove that Appellant committed unauthorized use of a vehicle, (3) the evidence is insufficient to prove that Appellant committed burglary of a building, (4) the evidence is insufficient to prove that Appellant committed theft, and (5) the evidence is insufficient to prove that Appellant engaged in organized criminal activity. We affirm.

*Background Facts*

During the early morning hours of May 19, 2013, Higginbotham Brothers in Brownwood was burglarized. The Brownwood Police Department arrived at the scene and noticed that someone had cut the lock on the main gate with bolt cutters. They also observed that the lock on the warehouse door was missing. Someone had hot-wired a forklift, which appeared to have been recently used. The manager of Higginbotham's noticed that two vehicles and twelve pallets of laminate roofing shingles were missing. The value of the stolen property exceeded $100,000.

At approximately 3:00 a.m. on May 19, 2013, Officer Christopher Jarrett Elting of the Rising Star Police Department observed a silver Nissan Xterra traveling north on Highway 183 in Rising Star. Officer Elting clocked the Xterra's speed at seventy-one miles per hour. The speed limit on that portion of the highway was fifty-five miles per hour. At the same time, Officer Elting also observed a flatbed semi-truck carrying roofing shingles following closely behind the Xterra. The truck was flashing its hazard lights and driving without headlights. Officer Elting testified

that Rising Star has very little, if any, traffic at this time of night. Because the two vehicles were traveling in close proximity, Officer Elting later realized that the Xterra and the truck were traveling together.

Officer Elting turned on his overhead lights and attempted to pull over the truck. Officer Elting chose to pull over the truck, rather than the Xterra, because driving without headlights created a safety issue. Officer Elting pursued the truck north on Highway 183 as it approached a four-way stop at the intersection of Highway 183 and Highway 36. Without stopping at the intersection, the truck turned right onto Highway 36 and began traveling east. Meanwhile, the Xterra stopped at the intersection and remained there.

The truck continued traveling east on Highway 36 for several blocks and then pulled over. Officer Elting parked his vehicle behind the truck and walked up to the driver's side of the cab. As Officer Elting approached the truck, he noticed that no one was in the truck and that the driver had fled through the passenger side door. Officer Elting inspected the truck and saw that there was no key in the ignition, that the dash had been torn apart, and that there were wires hanging out everywhere. Officer Elting concluded that the truck had more than likely been hot-wired. Officer Elting heard bushes rustling and dogs barking to the south. Due to his familiarity with the area, Officer Elting realized that the driver was fleeing toward East Ross Street. Officer Elting knew that the pasture through which the suspect was running had brush, trees, and barbed wire.

Officer Elting returned to his vehicle and drove to East Ross Street. When he arrived, Officer Elting saw the Xterra stopped in front of the officer's residence in Rising Star. Based on the direction that the Xterra had originally been traveling on Highway 183, Officer Elting believed that it must have turned around in order to arrive at this location. Based on this observation, Officer Elting believed that the Xterra had doubled back to come pick up the driver of the truck.

3

Officer Elting stopped the Xterra and ordered the occupants to exit the vehicle. Appellant, the driver of the Xterra, exited the vehicle first. The right front passenger, Immer Jonathan, exited the vehicle second. The rear passenger, Jose Hernandez, exited the vehicle last. Jose Hernandez had scratches on his arms, was sweating, and was breathing heavily. Officer Elting testified that Jose Hernandez's scratches were consistent with the type of injuries he would expect to see on someone who had been running through a pasture with brush and trees.

Officer Elting called for backup. He also asked Appellant and his two companions for identification. Appellant and his two companions produced identification documents issued in El Salvador and Guatemala. None of the three individuals produced a valid driver's license. Officer Elting called a tow truck to come pick up the Xterra because none of them could legally operate the vehicle. About fifteen minutes after the stop, Officer Elting contacted dispatch in order to run a background check on all three individuals.

While he was waiting on the results of the background checks, Officer Elting attempted to question Appellant and his two companions about what they were doing on East Ross Street at 3:00 a.m. Communication between Appellant and Officer Elting was difficult because of a language barrier. Approximately thirty minutes after the initial stop, the background checks came back negative on all three individuals. The background checks took approximately fifteen minutes due to the fact that Appellant and his two companions could only produce identification issued from foreign countries. Following the return of the background checks, Officer Elting told another officer over the telephone that Officer Elting had no reason to hold Appellant or his two companions and could not connect them to the truck. However, Officer Elting continued to detain Appellant and his companions while Officer Elting investigated their connection to what appeared to be a stolen truck.

4

Approximately forty minutes after the initial stop, Officer Elting called Customs and Border Protection (CBP). According to Officer Elting, the reason for doing so was to locate an interpreter who could assist him in speaking with Appellant and his companions. The CBP officer spoke to Appellant and both of his companions over the phone. Afterwards, the CBP officer informed Officer Elting that the officer would be placing immigration holds on all three individuals.

Around the time that Officer Elting was in communication with CBP, Officer Elting spoke with Deputy Ben Yarbrough of the Eastland County Sheriff's Department. Deputy Yarbrough informed Officer Elting about a memorandum distributed by the Abilene Police Department. The memorandum indicated that three Hispanic males driving a light-colored SUV were suspected of being involved in the theft of trucks loaded with roofing shingles. At that time, Deputy Yarbrough concluded that the truck was the same one stolen from Higginbotham's in Brownwood earlier that morning. Approximately seventy-one minutes after the initial stop, Officer Elting took Appellant and his companions into custody on the immigration holds and transported them to the Eastland County jail.

Law enforcement subsequently searched the Xterra and found the following items: a handwritten list of addresses for hardware stores, a Home Depot receipt for a pair of 24-inch HK Porter bolt cutters, a pair of bolt cutters, and business cards of construction companies. Law enforcement also searched the stolen truck and found a pair of 24-inch HK Porter bolt cutters, a screwdriver, a flashlight, and a set of boot prints. The boots taken from Immer Jonathan on the night that he was arrested appeared to match the boot prints found on the truck. The UPC number located on the 24-inch HK Porter bolt cutters found in the truck matched the UPC number on the Home Depot receipt found in the Xterra. One of the addresses listed on the handwritten list was Higginbotham's in Brownwood. Some other addresses were to

businesses in Abilene that had been burglarized and had shingles stolen from them prior to May 19.

*Analysis*

We begin by reviewing Appellant's challenges to the sufficiency of the evidence to support his four convictions. In Issues Two through Five, Appellant contends that the evidence was insufficient to convict him of the four offenses. We review a sufficiency of the evidence issue under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Issasi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

In his second issue, Appellant contends that the evidence was insufficient to support his conviction of unauthorized use of a vehicle. A person commits the offense of unauthorized use of a vehicle if the person intentionally or knowingly

operates another's motor vehicle without the effective consent of the owner. TEX. PENAL CODE ANN. § 31.07 (West 2011). Appellant argues that he could not have been convicted of unauthorized use of the Higginbotham's truck because he was never identified as the driver of the truck and was, in fact, driving the Xterra. Appellant relies on *Lewis v. State*, No. 06-12-00049-CR, 2012 WL 6217588 (Tex. App.—Texarkana Dec. 13, 2012, no pet.) (mem. op., not designated for publication), and *Duenez v. State*, 735 S.W.2d 563 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd), for the proposition that the State must, at a minimum, prove that Appellant was operating the vehicle.

We agree with Appellant that operation of the vehicle is an element of the offense. *See* PENAL § 31.07(a). However, under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." PENAL § 7.01(a). Under Section 7.02(a)(2) of the Penal Code, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." PENAL § 7.02(a)(2). When the defendant is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Peek v. State*, 494 S.W.3d 156, 163 (Tex. App.—Eastland 2015, pet. ref'd); *Schmidt v. State*, 357 S.W.3d 845, 855 (Tex. App.—Eastland 2012, pet. ref'd); *see also Longest v. State*, 732 S.W.2d 83, 85–86 (Tex. App.—Amarillo 1987, no pet.) (holding that there was sufficient evidence to convict the defendant of unauthorized use of a tractor when he assisted the primary actor in locating the keys to the tractor but did not actually operate the vehicle himself).

We conclude that there was sufficient evidence to support the trial court's determination that Appellant committed the offense of unauthorized use of the truck under the law of parties. There is evidence that the Xterra and the Higginbotham's truck were traveling together on May 19. The two vehicles were traveling in close proximity at 3:00 a.m. down a rural highway that has very little traffic at that time of night. A pair of 24-inch HK Porter bolt cutters was discovered in the truck. A Home Depot receipt for a pair of 24-inch HK Porter bolt cutters with a UPC number that matched the pair of bolt cutters from the truck was found in the Xterra. A handwritten list of addresses for hardware stores, one of which was for Higginbotham's in Brownwood, was discovered in the Xterra. Moreover, there is evidence that Appellant, as the owner and driver of the Xterra, directed, encouraged, or aided the driver of the truck. Appellant was traveling in front of the truck and illuminating the road, as the truck did not have operating headlights. Furthermore, Appellant appeared to have doubled back to pick up the driver of the truck after the driver fled from Officer Elting. We overrule Appellant's second issue.

In his third issue, Appellant contends that the evidence was insufficient to support his conviction for burglary of a building. A person commits burglary if he "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." PENAL § 30.02(a)(3). Appellant argues that there is no evidence that he committed burglary of a building because he was not found in or around the location of the burglary or in possession of any stolen property and because he did not attempt to flee the scene.

We conclude that there is sufficient evidence to support the trial court's determination that Appellant committed the offense of burglary of a building. There is ample evidence that Higginbotham's in Brownwood was burglarized. The lock on the main gate had been cut with bolt cutters. The forklift was warm, indicating that it had been recently used. Two vehicles and twelve pallets of laminate roofing

8

shingles were missing. That same morning, one of the stolen vehicles, a Freightliner truck carrying several pallets of roofing shingles, was found in Rising Star. There is sufficient evidence to support the trial court's determination that Appellant participated in the burglary. Appellant appeared to be traveling with the stolen truck down Highway 183. As discussed above, there was evidence located inside Appellant's vehicle that connected Appellant to the stolen truck. Since there is evidence that Appellant was acting together with another person in the commission of the burglary of Higginbotham's, we conclude that there was sufficient evidence to convict Appellant of burglary of a building. *See Wilkerson v. State*, 874 S.W.2d 127, 129 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (finding sufficient evidence to support a conviction for burglary under the law of parties when the defendant drove the getaway vehicle and footprints matching one of his passengers were found at the scene of the crime). We overrule Appellant's third issue.

In his fourth issue, Appellant contends that the evidence was insufficient to support his conviction of theft. "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." PENAL § 31.03(a) (West Supp. 2016). Appellant argues that there is no evidence that he committed theft because there is no evidence placing him in the building where the theft occurred; no evidence that he used the forklift, which was necessary to load the roofing shingles onto the truck; and no evidence that he drove the stolen truck. For the same reasons given above, we conclude that there was sufficient evidence to convict Appellant of theft under the law of parties. It was not necessary for the State to prove that Appellant himself was the primary actor in entering the building, loading the roofing shingles onto the truck, or driving the truck away from Higginbotham's. *See* PENAL § 7.02(a)(2). We overrule Appellant's fourth issue.

In his fifth issue, Appellant contends that the evidence was insufficient to support his conviction for engaging in organized criminal activity. A person engages

9

in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . the person commits or conspires to commit one or more" enumerated offenses. PENAL § 71.02(a). Appellant argues that there was insufficient evidence to convict him of engaging in organized criminal activity because (1) the State failed to prove that Appellant committed any of the underlying offenses of unauthorized use of a vehicle, theft, and burglary and (2) the State failed to prove that Appellant was acting in a continuing course of criminal activities. As we have discussed above, there is sufficient evidence in the record to support Appellant's convictions of the underlying offenses. Therefore, we will only address Appellant's argument that the State failed to prove that Appellant was acting in a continuing course of criminal activities.

The requirement that the State prove continuity as an element of engaging in organized criminal activity was explained by the Court of Criminal Appeals in *Nguyen v. State*, 1 S.W.3d 694, 696–97 (Tex. Crim. App. 1999). The court held in *Nguyen* that the continuity element requires "something more than a single, *ad hoc* effort" by the defendant. 1 S.W.3d at 697. However, this element does not require proof that the defendant committed more than one criminal offense. *Id.* Rather, the evidence must show an "intent to form a group to carry on criminal activities." *Id.* We have interpreted *Nguyen* to mean that it is this showing of intent that is determinative in deciding whether or not the continuity element has been met. *Arredondo v. State*, 270 S.W.3d 676, 683 (Tex. App.—Eastland 2008, no pet.) ("[I]t is not the number of criminal actions that is determinative but whether the intent to engage in continuous criminal activities was shown."). In *Arredondo*, we held that the evidence was insufficient to support a conviction of engaging in organized criminal activity where a group of individuals at a party acted together to assault a minor. *Id.* at 683–84. That case involved "a group of young people gathered

informally for a party and . . . during the course of their party several people individually made poor decisions." *Id.* at 683.

The facts of this case are distinguishable from the facts in *Arredondo*. There is ample evidence indicating that Appellant and his two companions were acting together with the intent to carry out criminal activities. The main gate to Higginbotham's appeared to be cut with bolt cutters. The stolen truck contained a pair of 24-inch HK Porter bolt cutters with a UPC number matching that found on a Home Depot receipt found in Appellant's vehicle. Investigators found a list of construction and lumber companies in Appellant's vehicle. The list contained not only the address of Higginbotham's, but the addresses of additional businesses that had been burglarized in a similar fashion in the weeks prior to May 19. Therefore, we conclude that the evidence in this case showed more than a mere informal gathering of friends who made a series of poor decisions. The evidence was sufficient for the trial court to infer that Appellant and his two companions planned to burglarize a series of hardware stores, made preparations to commit these crimes by purchasing bolt cutters from Home Depot, and then initiated their plan by breaking into Higginbotham's on May 19 and stealing at least one truck loaded with roofing shingles. We overrule Appellant's fifth issue.

In his first issue, Appellant contends that the trial court erred in denying his motion to suppress the evidence obtained from the Xterra. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23. We review de novo

the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23.

Article I, section 9 of the Texas constitution, along with the Fourth Amendment to the United States Constitution, protects individuals from unreasonable searches and seizures. *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). A police officer has reasonable suspicion to detain a person if he has specific and articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). This is an objective standard that disregards any subjective intent of the officer in making the stop and looks solely to whether the objective basis for the stop exists. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "The detaining officer need not personally be aware of every fact that objectively supports a reasonable suspicion to detain; the cumulative information known to the cooperating officers at the time of the stop is to be considered in making the reasonable-suspicion determination." *Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013). Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

To determine the reasonableness of a *Terry* stop, an appellate court must conduct a two-part inquiry: (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19–20; *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). In relation to the first inquiry, Appellant argues that the initial traffic stop of the Xterra was unreasonable because

no reasonable officer would have suspected that criminal activity was either taking place or about to take place. We begin by noting that it is undisputed that Appellant was speeding down Highway 183 when he was first observed by Officer Elting. A traffic violation, such as speeding, constitutes sufficient reasonable suspicion to detain a suspect. *See Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000). Appellant, however, repeatedly asserts that he committed no traffic violation *at the time he was stopped*.

Whether a traffic stop is made within a reasonable time and distance after the alleged traffic violation is a factor to be considered when determining the reasonableness of the stop. *State v. Dixon*, 151 S.W.3d 271, 274 (Tex. App.— Texarkana 2004), *aff'd*, 206 S.W.3d 587 (Tex. Crim. App. 2006). In *Dixon*, a traffic stop was invalidated because the officer followed the defendant for 3.2 miles after the alleged traffic violation occurred before making the stop. *Id.* at 275. In that case, it was noted that "nothing would have prevented an earlier stop." *Id.* That is not the case here. In this case, the detaining officer was faced with two vehicles that were committing traffic violations. Officer Elting reasonably concluded that the truck created the greater safety concern because it was driving on a highway after dark with no headlights. The delay in stopping the Xterra was attributed entirely to Officer Elting's need to stop the truck and, later, to pursue the driver.

Moreover, Officer Elting had reasonable suspicion to believe that the Xterra was driven to East Ross Street for the purpose of picking up the driver of the truck. Appellant contends that he was stopped merely for being in a "suspicious place" and that this, alone, is not enough to constitute reasonable suspicion. While things such as the time of day and the level of criminal activity in the area are factors that can be considered when determining reasonable suspicion, these things alone are not sufficient to justify a *Terry* stop. *Brodnex*, 485 S.W.3d at 437–38; *Crain*, 315 S.W.3d at 53. "[C]ourts generally require an additional fact or facts particular to the

13

suspect's behavior to justify a suspicion of criminal activity." *Klare v. State*, 76 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Here, the following actions taken by Appellant, as the driver of the Xterra, justified a particularized suspicion of criminal activity: (1) the Xterra appeared to be traveling in close proximity to the stolen Higginbotham's truck; (2) the Xterra remained stopped at the intersection of Highway 183 and Highway 36 for a long period of time after Officer Elting passed it, despite the fact that there was no traffic at that time; and (3) the Xterra turned around and went to the same spot where Officer Elting believed that the driver of the truck ran. While Appellant contends that there was an innocent explanation for all of these actions, whether Appellant's conduct is "as consistent with innocent activity as with criminal activity" is not the proper inquiry. *Woods v. State*, 956 S.W.2d 33, 37–38 (Tex. Crim. App. 1997). In fact, the primary purpose of a *Terry* stop is to clear up this very ambiguity in a suspect's actions and determine if the activity is innocent or criminal. *Leming v. State*, 493 S.W.3d 562, 565 (Tex. Crim. App. 2016). Viewing the totality of the objective facts available to Officer Elting at the time the stop was made, we conclude that the initial traffic stop of the Xterra was supported by reasonable suspicion.

Appellant next argues that, even if the initial stop was supported by reasonable suspicion, the detention was unreasonably prolonged in violation of the second prong of *Terry*'s two-part test. An investigative stop can last no longer than necessary to effect the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Parker v. State*, 297 S.W.3d 803, 810 (Tex. App.—Eastland 2009, pet. ref'd). Generally, once a background check has been completed and "the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, . . . the traffic-stop investigation is fully resolved." *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004).

Appellant first contends that Officer Elting unreasonably extended the length of the stop by asking a series of questions unrelated to the purpose of the stop, for approximately fifteen minutes, before initiating the background checks. We disagree. Officer Elting was not required to initiate the background checks before asking Appellant questions. *Id.* at 65 ("[N]either the Fourth Amendment nor the Supreme Court dictate that an officer making a *Terry* traffic stop must investigate the situation in a particular order."). Moreover, Officer Elting's questions were not unrelated to the purpose of the initial stop. In fact, Officer Elting's questions were directly related to his reasonable suspicion, discussed above, that the Xterra was traveling with the truck.

Appellant next contends that Officer Elting unreasonably extended the length of the detention when he held Appellant after the background checks were returned with no arrest warrants, despite the fact that Officer Elting could connect neither Appellant nor his companions to the Higginbotham's truck. We disagree for two reasons.

First, we are not bound by Officer Elting's subjective belief that reasonable suspicion did not exist if there are objective facts in the record that justify the continued detention. *Ford*, 158 S.W.3d at 492. The record indicates that one of Appellant's passengers, Jose Hernandez, had scratches on his arms, was sweating, and was breathing heavily—consistent with what one would expect to find on a person who has recently been running through an area containing brush and trees. Additionally, shortly after the background checks came back, Officer Elting received information from Deputy Yarbrough about the memorandum from the Abilene Police Department. The memorandum indicated that three Hispanic males driving a light-colored SUV were suspected of being involved in the theft of trucks loaded with roofing shingles. Information linking Appellant to another crime can constitute reasonable suspicion. *See Kothe*, 152 S.W.3d at 66 (detaining officer received

additional information from dispatch about the defendant's possible involvement in a crime just as the officer was about to release him). Given these facts, a reasonable officer could have continued to suspect that Appellant and his companions had been involved in the theft of the Higginbotham's truck and that Appellant had recently picked up Jose Hernandez, who could have been the driver of the truck. Therefore, it was not unreasonable for Officer Elting to continue to detain Appellant in order to confirm or deny these suspicions.

Second, it is undisputed that, while Appellant's background check came back clean, Appellant was unable to produce a valid driver's license. A routine check to determine whether Appellant had a valid driver's license was not only reasonable, but was in accordance with a general law enforcement purpose of maintaining traffic safety and security. *See Kothe*, 152 S.W.3d at 64 n.36. As such, a traffic investigation is not fully resolved until the officer is satisfied that the "driver has a currently valid license." *Id.* at 63. Here, neither Appellant nor his passengers had a valid driver's license. Therefore, for traffic safety reasons, Officer Elting was not required to allow Appellant to drive away in the Xterra.

Finally, Appellant contends that the trial court erred in denying his motion to suppress because his consent to search his vehicle was tainted by his illegal detention in violation of the Fourth Amendment. Since we have held that there was no Fourth Amendment violation in this case, we do not reach this contention. Appellant's first issue is overruled.

There is one additional matter referenced in Appellant's brief. In the "Summary of the Argument" section, Appellant appears to assert that the trial court erred in denying his application for community supervision. However, Appellant did not brief the issue or cite any authority in support of it. Accordingly, Appellant has waived any complaint regarding the trial court's decision to deny his request for community supervision. *See* TEX. R. APP. P. 38.1(i) (an appellate brief must

"contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Salazar v. State*, 38 S.W.3d 141, 147 (Tex. Crim. App. 2001) (dismissing the appellant's issues because "his brief presents no authority in support of his argument").[1]

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

JUSTICE

November 30, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

---

[1] A trial court is given wide latitude to determine the appropriate sentence in a given case. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). We cannot step into the shoes of the trial court and substitute our judgment for that of the trial court concerning the appropriate punishment unless the trial court has clearly abused its discretion. *See Tapia v. State*, 462 S.W.3d 29, 46 (Tex. Crim. App. 2015).